OPINION
Kellie Bailey appeals from the judgment of the Geauga County Court ofCommon Pleas, Juvenile Division, entered on February 1, 2001, grantingthe Geauga County Job and Family Services' ("GCJFS") motion for permanentcustody of the neglected and dependent children, Michael, Gary, andEdward Bailey. Appellant's parental rights were terminated. Thefollowing facts are relevant to this appeal.
 On August 30, 1999, GCJFS, appellee, filed a complaint pursuant toR.C. 2151.03(A)(2) and (3) and R.C. 2151.04(C) alleging that Michael,Gary and Edward Bailey were neglected and dependent children. Thecomplaint arose out of: domestic violence between Kellie Bailey,mother, and Michael Bailey, father; the parents' failure to addresshygiene issues; and, general infant care concerns previously reported toGCJFS. After a hearing, GCJFS was ordered to exercise protective custodyover the Bailey children and a Court Appointed Special Advocate ("CASA")Guardian ad Litem ("GAL") was appointed for the Bailey children.
During a pretrial hearing, on September 23, 1999, appellant entered a plea of true to an amended complaint. On October 1, 1999, the juvenile court adjudicated that the children were neglected and dependent children and extended the protective custody of GCJFS.
On October 5, 1999, the GAL filed a report recommending that the parents find stable housing, attend parenting classes, obtain counseling and anger management counseling. The GAL also recommended that the children remain in the custody of GCJFS.
At a disposition hearing, held on October 8, 1999, the court adopted the case plan filed on September 23, 1999, with one amendment. The case plan stated that Kellie will: attend and participate in individual counseling to address anger management; attend a domestic violence support group; attend and participate in at least six weekly sessions within an eight week period; and, not argue with adults in the presence of the children. Additionally, the case plan mandated that Kellie Bailey obtain new housing and address hygiene issues concerning the children.
On December 27, 1999, a new CASA GAL was appointed for the Bailey children. On February 10, 2000, the GAL filed a report expressing concern for the children and about the poor housing conditions. She recommended that unless appellant can assure the court that she is willing to take the necessary steps to maintain a safe, stable, and healthy environment, alternative placement should be considered.
At a review hearing, on February 22, 2000, the court, on its own motion, placed the children in the temporary custody of GCJFS. Michael Bailey Sr. was incarcerated form October 21, 1999 through June 20, 2000, and therefore did not attend the hearing.
On July 11, 2000, GCJFS moved the court to order Kellie Bailey to show cause as to why she failed to comply with the court's orders and the case plan. On August 21, 2000, a hearing was held on GCJFS's motion to show cause and also for a review of compliance with the case plan. Kellie Bailey admitted that she was in contempt of court for not following either the court's orders or the case plan.
On August 14, 2000, the GAL filed a report stating that the boys enjoyed spending time with their foster parents and that the biological parents had not met the objectives of the case plan. She recommended that the boys remain in foster care, so that, if reunification were not possible, the children would already be placed in a permanent home. On January 12, 2001, the GAL filed a report recommending that appellant's parental rights be terminated and that the current foster family adopt the children.
On September 6, 2000, the juvenile court found that, despite reasonable efforts of GCJFS: appellant had failed to address the issues in the case plan; appellant was in contempt of court; and, that it was in the children's best interest to remain in the temporary custody of GCJFS.
On December 5, 2000, the GCJFS filed a motion for permanent custody. Michael Bailey and his mother, Karen Bailey, filed objections to the motion for permanent custody. Karen Bailey filed a motion to intervene which was subsequently granted.
On January 12, 2001, the GAL filed a report recommending that appellant's parental rights be terminated and that the current foster family adopt the children. In her report, the GAL stated that she was unable to contact appellant. She stated that, during their first meeting, appellant told her that she would go along with the case plan, but after GCJFS was no longer involved, she would resume her prior behavior. The GAL further stated that appellant is unkind to her children and other people and has made no progress in the case plan.
A permanent custody hearing was held on January 19, and on January 26, 2001. In total, GCJFS presented twelve witnesses and forty-six exhibits in support of its motion for permanent custody. Subsequently, on February 1, 2001, the court found, by clear and convincing evidence, that it was in the best interest of the children that GCJFS be granted permanent custody of the children. From this judgment, appellant assigns the following as error:
 "[1.] The trial court erred to the prejudice of defendant[-] appellant in finding that the Geauga County Job Family Services employed reasonable case planning and diligent efforts to implement the reunification plan.
 "[2.] The trial court erred to the prejudice of defendant-appellant, by finding that the minor children could not be placed with appellant within a reasonable length of time and granting Geauga County Job and Family Services permanent custody was against the manifest weight of the evidence.
 "[3.] The trial court erred to the prejudice of defendant-appellant when it determined that permanent custody is in the best interest of the minor children and was against the manifest weight of the evidence."
 In appellant's first assignment of error, she contends that GCJFS did not employ reasonable case planning or diligent efforts to implement a reunification plan. In response, appellee argues that R.C. 2151.414(E) and (E)(1) require only that GCJFS assist the parents in remedying the problems that caused the children to be placed outside the home.
This court has previously stated that the juvenile court's inquiry is "whether the agency employed reasonable case planning and diligent efforts." In re Shchigelski (Oct. 20, 2000), Geauga App. No 99-G-2241, WL 1568388, unreported at *9. Review of the record reveals that appellant was provided with a caseworker from GCJFS, Gina Schultz, who reviewed the objectives and progress of the case plan. Appellant was assessed by Ms. Gagliardi of Ravenwood Mental Health Center ("Ravenwood") who determined counseling was needed. Appellant attended only four appointments, for the purpose of assessment, and did not attend any subsequent counseling at Ravenwood. The record is silent as to the number of required counseling sessions in which appellant should have participated. Appellant was provided with free parenting classes at Ravenwood, but attended only two and a half of the eight required classes. In addition, appellant was scheduled to receive services at Western Reserve Counseling, including anger management, parenting, and individual counseling. She attended just four of the eight parenting classes, four of the twelve anger management sessions, and only one individual counseling session.
Thus, the record demonstrates that GCJFS made diligent efforts to remedy the problems that caused the children to initially be placed outside the home. Appellant's first assignment of error is without merit.
In appellant's second and third assignments of error, she contends that the juvenile court's finding that the children could not be placed with appellant within a reasonable amount of time was not supported by clear and convincing evidence and that the court erred in finding that it was in the children's best interest to grant GCJFS's motion for permanent custody.
R.C. 2151.414(B) provides a two-pronged analysis for the juvenile court to apply when ruling on a motion for permanent custody. After a hearing on the motion, the juvenile court may grant permanent custody of the child to the agency if the court determines, by clear and convincing evidence, that it is in the best interest of the child and that one of the following is applicable: "(1) the child is not abandoned or orphaned, and the child cannot be placed with the parents; (2) the child is abandoned and the parents cannot be located; or (3) the child is orphaned and there are no relatives of the child who are able to take permanent custody." In re Jacobs (Aug. 25, 2000), Geauga App. No. 99-G-2231, 2000 Ohio App. LEXIS 3859, unreported at *9. Generally, the juvenile court first determines whether one of the circumstances delineated in R.C. 2151.414(B)(1) through (3) is presented before proceeding to a determination regarding the best interest of the child.Id at *9.
"An appellate court will not reverse a juvenile court's termination of parental rights and award of permanent custody to an agency if the judgment is supported by clear and convincing evidence." In the Matterof Taylor (June 11, 1999), Ashtabula App. 97-A-0046, 1999 Ohio App. LEXIS 2620, unreported at *3. Clear and convincing evidence is more than a mere preponderance of the evidence; it is evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. In re Adoption of Holcomb (1985),18 Ohio St.3d 361, 386, 481 N.E.2d 613.
Turning to the instant case, we will first examine the juvenile court's determination that the children could not or should not be placed with either parent within a reasonable time. A juvenile court has the authority to grant permanent custody of a child to an agency if the court determines, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody to the agency and that the child, not being abandoned or orphaned, cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents. R.C. 2151.414(B). In determining whether the child cannot be or should not be placed with either parent within a reasonable time period pursuant to R.C. 2151.414(E), the juvenile court must consider all relevant evidence before making this determination and is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the conditions enumerated in R.C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents. See Shchigelski, supra.
Relevant to the case subjudice, the juvenile court determined, by clear and convincing evidence that, following the placement of the child outside the home and notwithstanding reasonable case planning and diligent efforts by the agency, the parent has failed continuously andrepeatedly to substantially remedy the conditions causing the child to beplaced outside the child's home. R.C.2151.414(E)(1). "In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties." R.C. 2151.414(E)(1).
This court has previously held that noncompliance with a case plan is a basis for terminating parental rights. In re Thurlby (June 15, 2001), 2000-A-0088, unreported at *10. In re Ranker (Oct. 6, 2000), Portage App. No. 99-P-0072, unreported; citing In re Brofford (1992),83 Ohio App.3d 869, 878, 615 N.E.2d 1120. The issue to be focused upon is whether the parent has substantially remedied the conditions that caused the child's removal. In re Shchigelski, supra at *13. Generally, the case plan's objectives are geared toward remedying the conditions that initially caused the child's removal.
In the instant case, the juvenile court found that appellant had failed to address the issues and concerns that caused the children to be placed outside their home, thus establishing R.C. 2151.414(E)(1). See, e.g.Shchigelski at *14. In particular, this was established clearly and convincingly by appellant's basic default on the case plan. Additionally the juvenile court expressed concern that if the children were allowed to return to the parents' home they would be at risk of exposure to illegal substance abuse and domestic violence between the parents and that poor hygiene and poor educational support of the children would continue based on the parents' continued failure to address these issues. These findings are sufficient to sustain the court's judgment. See e.g.Shchigelski at *14.
Review of the record reveals that appellant did not make efforts to comply with the case plan as required by statute. The objectives of the case plan were directed toward remedying the conditions that initially caused the children to be removed from the home. As discussed, supra,
appellant was provided with many services and opportunities to achieve the objectives in the case plan, but failed to utilize the services made available to her for the purpose of changing parental conduct and to allow her to resume and maintain her parental duties. Thus, we conclude that the juvenile court was presented with clear and convincing evidence that appellant failed to remedy the conditions which resulted in the children being placed in the custody of GCJFS and of R.C. 2151.414(E)(1); appellant's second assignment of error lacks merit.
Proceeding to the second prong of the analysis, appellant argues that that the juvenile court erred in its determination that granting permanent custody to GCJFS was in the best interest of the children. Appellant argues that the juvenile court failed to consider R.C.2151.414(D)(2). Appellee contends that the record reveals that the court considered all the factors listed in R.C. 2151.414(D).
In determining what is in the best interest of the child, the juvenile court shall consider all the factors enumerated in R.C.2151.414(D) before granting permanent custody of a child. See e.g., In re Alexander (Dec. 19, 1997), Trumbull App. No. 96-T-5510, 1997 Ohio App. LEXIS 5742, unreported at *5. These factors include: (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child; (2) The wishes of the child, as expressed directly by the child or through the child's guardianad litem, with due regard for the maturity of the child; (3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999; (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; (5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child." R.C.2151.414(D).
Failure to discuss each of these factors when determining the best interest of the child is prejudicial error. In re Jacobs (Aug. 25, 2000), Geauga App. No. 9-G-2231, 2000 Ohio App. LEXIS 3859, unreported at *3. Thus, the record must show that the juvenile court considered all five of the factors enumerated in R.C. 2151.414(D) when reaching its judgment, however, no one factor is dispositive of the issue. Id.
Review of the February 1, 2001 judgment entry demonstrates that the juvenile court considered all five factors when reaching its judgment. In the court's judgment entry, it is specifically stated that the court considered the factors outlined in R.C. 2151.414(D) and the bond of love shared by the children and their parents. Despite the children's love for their parents, the court explained that the parents' inability to provide a safe and nurturing environment, together with the safe and nurturing environment of the foster home, outweighs any advantage of reunification. Additionally, the court stated that it considered the timely filed report[1] of the GAL, recommending that appellant's parental rights be terminated and that the current foster family adopt the children. Thus, the record indicates that the court considered all the factors enumerated in R.C. 2151.414(D); appellant's third assignment of error is without merit.
While not presented as an assignment of error, appellant argues that the juvenile court erred in failing to appoint an attorney GAL. As support for her argument, she relies on the dissenting opinion inShchigelski, supra.
The decision whether to appoint a CASA GAL or attorney GAL lies in the discretion of the juvenile court. R.C. 2151.281(H). Both Juv.R. 4(C) and R.C. 2151.281(H) contemplate the appointment of an individual who is not an attorney as guardian ad litem for an alleged abused, neglected and/or dependent child. Byram v. Lucas County Children Services Bd.,
(Nov. 22, 1991), Lucas App. No. L-91-179, LEXIS 5584, unreported at *14-15. Further, a dissenting opinion is not binding precedent. Thus, we conclude that the court did not err in appointing a CASA GAL instead of an attorney GAL.
Also not presented as an assignment of error, appellant argues that the trial court erred in awarding permanent custody to GCJFS without giving appellant one year to fulfill the objectives of the case plan. Appellant essentially argues that GCJFS is required to maintain custody of a child for one full year prior to motioning for permanent custody. There is no support for appellant's argument that a parent must be given at least a full year to fulfill his or her case plan prior to the termination of parental rights and the custodial history of the child. R.C.2151.414(D)(3), is just one of the factors that the court must consider and no one factor is dispositive. See e.g. Jacobs, supra.
For the foregoing reasons, the judgment of the Geauga County Court of Common Pleas, Juvenile Division, is affirmed.
 ____________________________ JUDGE ROBERT A. NADER
FORD, P.J., GRENDELL, J., concur.
[1] Review of the record indicates that the GAL filed a report on January 12, 2001, before the permanent custody hearing which was held on January 19, and January 26, 2001.